## G. S. IKEDA *v.* ANTONE RAMOS PEDRO.

### No. 2018.

SUBMITTED SEPTEMBER 17, 1931.          DECIDED OCTOBER 6, 1931.

### PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a bill in equity for the specific performance by the purchaser of a contract to purchase land. The respondent filed a cross-bill charging fraud against the seller and asking for the cancellation of the contract.

The transaction between the parties related to various pieces of land situate at Waipahu on this island and containing in the aggregate an area of about thirty acres. Not long prior to the date of the contract the seller had purchased the land for $15,000 at a public auction held by a commissioner in partition proceedings. The land had been advertised by the commissioner at $30,000 or $35,000 and when no bidders appeared the upset price was reduced to $25,000 and, no bidders still appearing, the upset price was further reduced to $15,000. Notice of each of these sales had been duly published. The purchase price named in the contract under consideration was $30,000. $3000 was paid in cash and the purchaser undertook to pay the remainder in certain named installments. The purchaser failed to make the payments and finally repudiated the contract.

At the trial all of the testimony offered by the parties was received. It was claimed by the respondent purchaser that two of the seller's agents, named respectively Choy and Wilcox, represented to him that one Dr. Uyehara, one Ota and two sets of Chinese were ready and willing to purchase each a certain portion of the land at certain stated prices and that the respondent, if he bought the land, could resell it in subdivided portions at an aggregate of $40,000, thus making a profit of $10,000. On this subject the findings and comments of the circuit judge were as follows: "In the first place, there is no evidence herein that such representations, if made, were untrue. However, the critical point in this connection is that statements of this character fall clearly within the classification of 'puffing' or high-powered sales talk. It necessarily was obvious to the respondent that the exact amount which could be obtained from the thirty acres to be purchased by him, when and if sold in small subdivided tracts, would be indefinite. The very essence of a transaction of buying a large tract of land as a whole and thereafter reselling the same in small subdivided units is one of uncertainty as to the amount of profit to be realized, if any. No reasonable man could reach any other conclusion. It is a matter of common knowledge that many circumstances prevent the completion of prospective sales. Respondent's alleged view of the transaction into which he was entering would compel an inference that he believed that without the assumption of any risk whatever on his part he was assured with definiteness that he would make a substantial profit. It was, therefore, necessary for him under such belief to ascribe to the seller of the property, the petitioner herein, motives of utmost generosity in making available to the respondent the *certainty* of making such profit. The evidence herein shows that respondent and his wife, so

far from having confidence and trust in the petitioner, viewed him and his agents with suspicion and distrust even prior to the entering into of the within contract. Under these circumstances the very most that the respondent could reasonably have believed was that a pious and reasonable hope of substantial profit existed in connection with such prospective resales. It is the opinion and decision of the court that under the evidence adduced herein this defense is without merit."

We agree with the circuit judge. The representations relied upon by the respondent as misrepresentations were made prior to the date of the contract signed by the seller and the purchaser, at a time when the seller's agents were endeavoring to make the sale to the respondent. While the evidence is undisputed that the representations were made, a careful examination of the transcript shows that no evidence whatever was adduced that the representations were untrue. It is clearly apparent from the evidence that the statements of Dr. Uyehara, Ota and the two Chinese firms that they would like to buy the pieces of land referred to were based upon the condition that the respondent should purchase the land as a whole and place himself in the position of ability to convey to each of them the desired portion. The respondent delayed and finally failed to make the purchase. For aught that appears to the contrary in the evidence, each of the supposed subpurchasers was in fact ready and willing to buy at the time when he said that he would buy and each subsequently changed his mind and concluded not to purchase. No written contracts from the subpurchasers were tendered by Choy and Wilcox to the respondent and none were claimed to exist. In so far as the statements of Choy and Wilcox consisted of mere opinions on their part that a subdivision would result in sales aggregating $40,000, those statements

were mere "puffing" within the meaning of the law on the subject and not actionable even if subsequently found to be erroneous. The definite statements of existing facts, to-wit, that each of the four persons or firms named stood ready to buy certain portions of the land at a stated price, are not shown to have been untrue in fact. The burden of showing this was upon the party alleging the fraud, to-wit, the respondent. Choy and Wilcox were not called as witnesses. Dr. Uyehara and the Chinese who were claimed to have expressed themselves as willing to purchase were not called as witnesses. Ota was called by the petitioner, but on objection by the respondent was not permitted to testify on the subject. While it does appear that no sales were actually made by the seller's agents, it does not appear that the four named sub-purchasers were not in fact willing to buy at the time that they were represented to be willing to purchase.

It does expressly appear from the respondent's own testimony that Philip Wong, another agent of the seller, and perhaps his chief agent, cautioned the respondent, prior to the execution of the contract of sale and purchase, in unambiguous language not to purchase the land unless he already had sufficient money of his own to perform the contract. This was in effect an admonition to the respondent not to rely upon the supposed results of any subdivision and resale.

At all times during the negotiations leading up to the execution of the contract the respondent consulted and was advised by one Lee Kwai, who had had long experience in the purchase and sale of real estate on this island. Despite his present protestations, the evidence clearly shows that the respondent did not place reliance upon the representations of Choy and Wilcox but formed and depended upon his own judgment as to the probable outcome of his venture. The undisputed evidence shows that

on more than one occasion the respondent, in answer to the complainant's requests for payment, asked for more time and pleaded financial inability, without any complaint or claim that fraud had been practiced upon him by the complainant's agents.

The objection that the deed tendered by the seller to the purchaser did not contain covenants of warranty, but was a mere quitclaim deed, cannot be sustained. There is no doubt, upon the evidence adduced, that the seller made known to the purchaser, prior to the execution of the contract, that there was some doubt as to his title to a certain five-acre piece of the land involved and that he could not warrant the title to the whole. The contract itself provides that "the seller does not warrant the title of the premises hereby conveyed and that upon full payment by the purchaser of the sum agreed to be paid the seller will convey by quitclaim deed." No subsequent valid amendment of this provision is proven or claimed.

The decree appealed from is affirmed.

*E. J. Botts* for petitioner.

*Ulrich & Hite* for respondent.